Nos. 15-50509, 16-50048, 16-50117, 16-50195, 16-50345

# United States Court of Appeals
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

*v.*

ROBERT COLLAZO, LINO DELGADO-VIDACA, JULIO
RODRIGUEZ, STEVEN AMADOR, ISSAC BALLESTEROS
DEFENDANTS-APPELLANTS

*On Appeal from the United States District Court
for the Southern District of California
13CR4514-BEN*

**SUPPLEMENTAL BRIEF REGARDING EN BANC CONSIDERATION**

ROBERT S. BREWER, JR.
 *United States Attorney*

HELEN H. HONG
 *Assistant U.S. Attorney
 Chief, Appellate Section
 Criminal Division*

DANIEL E. ZIPP
 *Assistant U.S. Attorney*

 *880 Front St., Rm. 6293
 San Diego, CA 92101
 (619) 546-8463*

**TABLE OF CONTENTS**

Page

Introduction   1
Statement   4
Discussion   6
Certificate of Compliance

**TABLE OF AUTHORITIES**

Cases:

*Alleyne v. United States*, 570 U.S. 99 (2013)   17

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)   14

*Derman v. United States*, 298 F.3d 34 (1st Cir. 2002)   16

*Garrett v. United States*, 471 U.S. 773 (1985)   17-18

*Kimbrough v. United States*, 552 U.S. 85 (2007)   19

*Neal v. United States*, 516 U.S. 284 (1996)   19

*Pinkerton v. United States,* 328 U.S. 640 (1946)   passim

*Smith v. United States*, 508 U.S. 223 (1993)   19

*United States v. Banuelos*,
  322 F.3d 700 (9th Cir. 2003)   6, 17, 20

*United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002)   11

*United States v. Collins*, 415 F.3d 304 (4th Cir. 2005)   18

*United States v. Cotton*, 535 U.S. 625 (2002)   14

*United States v. Gasca-Ruiz*,
  852 F.3d 1167 (9th Cir. 2017) (en banc)   8

*United States v. Haines*, 803 F.3d 713 (5th Cir. 2015)   17

*United States v. Jauregui*, 918 F.3d 1050 (9th Cir. 2019)   3

*United States v. Jefferson*, 791 F.3d 1013 (9th Cir. 2015)   14

*United States v. Jimenez Recio*, 537 U.S. 270 (2003)   18

*United States v. Law*, 528 F.3d 888 (D.C. Cir. 2008)   15

*United States v. Martinez*, 987 F.2d 920 (2d Cir. 1993)   13

*United States v. Pizarro*, 772 F.3d 284 (1st Cir. 2014)   17

*United States v. Pressley*, 469 F.3d 63 (2d Cir. 2006)    15

*United States v. Rangel*, 781 F.3d 736 (4th Cir. 2015)    17

*United States v. Robinson*, 547 F.3d 632 (6th Cir. 2008)    19

*United States v. Sanchez-Cervantes*,

 282 F.3d 664 (9th Cir. 2002)    7

*United States v. Seymour*, 519 F.3d 700 (7th Cir. 2008)    16

*United States v. Shabani*, 513 U.S. 10 (1994)    18

*United States v. Stiger*, 413 F.3d 1185 (10th Cir. 2005)    16

*United States v. Stoddard*,

 892 F.3d 1203 (D.C. Cir. 2018)    16, 17

*United States v. Torres*,

 869 F.3d 1089 (9th Cir. 2017)    passim

*United States v. Turner*, 319 F.3d 716 (5th Cir. 2003)    16

*United States v. Young*, 847 F.3d 328 (6th Cir. 2017)    17

Statutes

 18 U.S.C. § 1962(d)    5

 18 U.S.C. § 1963(a)    11

 21 U.S.C. § 841    5, 7, 8, 14,16

 21 U.S.C. § 846    3, 17, 19, 20

Legislative Material:

 134 Cong. Rec. S17, (daily ed. November 10, 1988)

  (statement of Sen. Biden)    13

Nos. 15-50509, 16-50048, 16-50117, 16-50195, 16-50345

# United States Court of Appeals

### FOR THE NINTH CIRCUIT

### UNITED STATES OF AMERICA,

##### PLAINTIFF-APPELLEE

*v.*

### ROBERT COLLAZO, LINO DELGADO-VIDACA, JULIO RODRIGUEZ, STEVEN AMADOR, ISSAC BALLESTEROS

##### DEFENDANTS-APPELLANTS

*On Appeal from the United States District Court
for the Southern District of California
13CR4514-BEN*

### INTRODUCTION

Over the last 25 years, the law of this Circuit has evolved so that the test for determining conspirator liability for drug amounts under § 841(b) requires a disjunctive showing that the drug amount was either "reasonably foreseeable" or "within the scope" of a conspirator's own agreement. Meanwhile, the test for conspirator liability under the Sentencing Guidelines requires a conjunctive showing that the drug amount was both "reasonably foreseeable" and "in furtherance of the jointly undertaken criminal activity." As this Court recognized in *United States v. Torres*, 869 F.3d 1089 (9th Cir. 2017), there is little logic supporting this distinction, since the

Court "adopted the disjunctive formulation under § 841(b) in the first place to make the two approaches identical," and then failed to adjust the § 841(b) test after the language in the Guidelines was amended. *Id.* at 1108. Ultimately, this Court in *Torres* concluded that "en banc review will likely be necessary to sort the whole mess out," when the Court is confronted with "a case where it matters." *Id.* at 1106, 1108.

This is not the case where it matters. First, as to both Delgado and Rodriguez, the court imposed a sentence below 20 years—the maximum sentence that would have applied even with no finding of quantity at all—and the record confirms the court never contemplated a sentence below the 10-year mandatory minimum triggered by the quantity finding. The drug quantity finding was therefore immaterial to their sentences. Second, as to all of the Appellants, the evidence showed that the conspiracy involved far more than the amounts of heroin and methamphetamine required to trigger the increased statutory maximums, *and* that those amounts were "reasonably foreseeable" to and within the scope of the agreement for each Appellant. Just as in *Torres*, "[d]rug dealing was not something that happened on the sidelines—it was the primary object of the conspiracy of which all defendants were members." *Id.* at 1107. Given the extensive wire-tap evidence and

cooperator testimony presented at trial, a jury would have found the relatively modest 50 and 100 gram amounts whether they were instructed in the disjunctive, conjunctive, or some *Pinkerton* formulation. This Court should—as it has in the past—decline to take the issue en banc here and instead address it where it is not merely academic.

Nevertheless, if this Court elects to consider the issue en banc, the United States agrees that the disjunctive test from *Banuelos* should be set aside. Under the plain statutory text of § 841(b) and § 846, the sentencing range for a drug-distribution conspiracy is tied to the type and amount of drugs that the conspiracy *as a whole* "involv[es]." That straightforward reading of the statute avoids the flaws inherent in either a guidelines formulation or the *Pinkerton* test that other courts have adopted. "[T]he Guidelines do not affect our interpretation of a statute such as § 841," and there is no reason in the legislative history or language of the statute that should tether the meaning of "involving" to the guidelines. *Torres*, 869 F.3d at 1098. Nor is there reason to "conflat[e] liability for the crime of conspiracy and for substantive crimes committed by the conspiracy," as the *Pinkerton* test suffers. *United States v. Jauregui*, 918 F.3d 1050, 1062 (9th Cir. 2019). All the statute requires is evidence that the conspiracy

"involved" a drug type and quantity to trigger the penalty enhancements, which was readily proven here.

## STATEMENT

Appellants are associates of the Mexican Mafia, a criminal organization that controls narcotics trafficking, extortion, and other illegal activity inside the U.S. prison system. Supplemental Excerpts of Record (SER) 827-56. Through a system known as "thirds," the organization uses the threat of violence to collect one third of the proceeds from all drugs smuggled into prison, as well as "rent" from drug dealers operating outside of prison in areas controlled by the organization. SER 84, 605, 846. These funds are then passed up through a multi-layered leadership hierarchy. SER 828-833. At the top of the "pyramid" of the organization are approximately 150 "made" members, and below them, one level down, are individuals known as "secretaries" who serve as "facilitators" and pass along the orders of the made members. SER 828-833, 849-50, 874, 887.

The Appellants fulfilled distinct roles within the Mexican Mafia. Delgado had been recently released from custody after serving as the cellmate of "made" member, Luis Garcia, and he worked to collect rent payments from gang members selling drugs in Mexican Mafia-controlled areas of Southern California. SER 85-

86, 203, 234-35, 254, 398, 2655. Amador, who served as a "secretary" to Luis Garcia, coordinated the distribution of narcotics into various prisons in Southern California and authorized violence on behalf of the organization. SER 673-77, 723, 1102, 1447. Collazo was in charge of a minimum security yard at the Donovan correctional facility, where he coordinated the regular importation of methamphetamine and heroin, and ensured that taxation from the sale of those drugs were passed up to the organization. SER 687, 766, 1069, 2740-42, 2830, 2860. Finally, Rodriguez was housed in Ironwood prison, where he imported heroin both for his own use and for resale on the "yard" to benefit the Mexican Mafia. SER 1375-1410, 1485-91.

Following a jury trial, each Appellant was found guilty of a RICO conspiracy, in violation of 18 U.S.C. § 1962(d), and conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1). The jury returned special verdict forms, however, attributing different drug amounts to each defendant on the drug conspiracy offense, and the court imposed the following sentences:

| Defendant | § 841(b) Special Verdict Form | Sentence |
|---|---|---|
| Delgado | 50 grams methamphetamine | 210 months (18 years) |
| Amador | 100 grams heroin | 292 months (24.5 years) |
| Collazo | 100 grams heroin, and 50 grams methamphetamine | 360 months (30 years) |
| Rodriguez | 100 grams heroin | 175 months (14.5 years) |

**DISCUSSION**

1. In *Torres*, this Court observed that the law has evolved—or rather failed to evolve—so that the test for conspirator liability for drug quantity is based on a disjunctive test from a 1991 version of the Sentencing Guidelines that has since been amended. 869 F.3d at 1097; *United States v. Banuelos*, 322 F.3d 700, 705 (9th Cir. 2003). As the concurrence noted, this Court has never provided "a reasoned explanation" for why this test—based on the definition of "relevant conduct" in the Guidelines—should have controlled the interpretation of § 841(b) in the first place. And, as the majority noted, there is little logic supporting continued application of the old, disjunctive test, since the formulation was adopted solely to match the Guidelines, which have now been changed. *Torres*, 869 F.3d at 1108.

Nevertheless, while this Court noted the illogic of applying the disjunctive instruction, it ultimately concluded "[w]e are not

prompted to call for our court to revisit the broader issue en banc in the context of this case, because in the end it would not alter its outcome." *Id.* at 1107. So here. As in *Torres*, the evidence here showed that far more than the modest amounts of heroin and methamphetamine required to trigger the increased statutory maximums were distributed in furtherance of the conspiracy, *and* that those amounts were "reasonably foreseeable" to each Appellant. Whether the jury had been instructed in the conjunctive, the disjunctive, or under some instruction based on *Pinkerton* liability, the outcome of this case would have been the same.

First, as to Delgado and Rodriguez, the court sentenced them below the statutory maximum of 20 years that would apply even with no finding of drug amount at all, and nothing in the record suggests that the district court would have imposed less than the 10-year mandatory minimum. See 21 U.S.C. § 841(c). As to these two Appellants, therefore, any error in the jury instruction is necessarily harmless. See *United States v. Sanchez-Cervantes*, 282 F.3d 664, 669 (9th Cir. 2002) ("even with no finding of a particular drug quantity, a sentence of twenty years or less would not violate *Apprendi*").[1]

---

[1]     Although Appellants argue that their ultimate sentence was still affected by the jury's finding—because the court applied the same disjunctive test when calculating their Guideline range—

Second, as to all the Appellants, there was substantial evidence that far more than 50 or 100 grams of methamphetamine or heroin fell within the scope of the conspiracy, was distributed in furtherance of the conspiracy, and was reasonably foreseeable to each Appellant.[2] First, the jury heard evidence—from dozens of recorded calls—demonstrating widespread drug distribution outside of prison, in "ounce" [28 grams], "quarter" ounce [7 grams], and "eight ball" [3.5 grams] quantities. See, e.g., SER 267, 2641, 2600, 2619, 2649, 2659. They also heard numerous recorded calls discussing the regular and repeated importation of methamphetamine and heroin into prison, in quantities described

---

there is nothing to support this assertion. In fact, the district court recognized that a different conjunctive formulation applied in the guidelines context. SER 2067-70 (district court stepping off the bench to read *Becerra* and concluding that it applied to the "guidelines" and "sentencing" not to the jury's findings). Then, at sentencing, the court simply adopted the base offense level from the PSR. On this record, there is nothing to suggest that the court was silently applying the incorrect, disjunctive test from the § 841(b) context when calculating the Guidelines at sentencing. See *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1174-75 (9th Cir. 2017) (en banc) ("we will not assume that the court applied the wrong legal standard").

[2] As to Collazo—who was sentenced to 30 years' custody, below the 40 year statutory maximum of 21 U.S.C. § 841(b)(1)(B)—the jury would have been required to find only *five* grams of pure methamphetamine to support the necessary statutory maximum.

as "pieces" [28 grams] and "half pieces" [14 grams]. See, e.g. SER 2734-36, 2747, 2763, 2775, 2891, 2912, 2969.

These intercepted calls were corroborated by the testimony of numerous cooperating witnesses, who described the purchase, distribution, and importation of aggregate quantities far greater than 50 or 100 grams. See, e.g. SER 300-05, 313 (describing the sale of "pound" quantities of methamphetamine); SER 769 (describing the monthly importation of "ounce" or "half ounce" quantities of methamphetamine in a single yard controlled by Collazo); SER 1392-93 (describing the regular importation of "50 grams" of heroin for Rodriguez to distribute in prison). The jury also received evidence of multiple seizures of heroin and methamphetamine— directly tied to the intercepted calls—along with DEA chemist testimony that the methamphetamine seized was 99 percent pure. See SER 245, 251, 268-69, 746, 757, 766 1486, 1344, 1374.

In addition to this evidence that the conspiracy as a whole involved more than 50 or 100 grams, there was also substantial evidence that these amounts fell within the scope of each Appellant's agreement and was reasonably foreseeable to them. First, the jury heard evidence that the entire purpose of the Mexican Mafia was to import narcotics into the U.S. prison system. An expert witness on the Mexican Mafia, and a cooperating former

member of the organization, explained how the organization operates, nationwide, with "tens of thousands" of associates and a "pyramid" leadership structure, with approximately 135 to 150 "made members" at the top and their "secretaries" one level below. SER 828, 836. The witnesses explained how the organization collects "rent" from criminal street gangs in return for permission to sell drugs in certain areas outside of prison, SER 84, 605, 630, 846-50, as well as "thirds" or one third of any drugs sold within the prison system. SER 84, 605, 846.

Second, the jury then heard evidence about each Appellant's role within that larger organization. Delgado reported directly to the fiancée of "made" member Luis Garcia, and worked to collect "rent" on his behalf from drug sales across Southern California. SER 85-86, 203, 234-35, 254, 398, 2655. Amador served as a "secretary" to Garcia—one level below the top of the organizational pyramid—and he was intercepted collecting rent money in various prisons, and authorizing violence on behalf of the organization. SER 673-77, 723, 1102, 1447. Collazo was in charge of an entire yard at Donovan prison, which he used to regularly import narcotics using "work crews," and then collect rent payment from the sale of those narcotics to pass up the organization. SER 687, 766, 1069, 1072-73, 1111, 2740-42, 2634, 2830, 2860. Finally, Rodriguez was housed in

Ironwood prison, where he regularly imported heroin for resale on the "yard" and then passed along "rent" to Amador and others. SER 1375-1410, 1485-91. Given each Appellant's high-level role in the overall organization, it no doubt fell within the scope of the individuals appellants' agreement and was reasonably foreseeable that at least 50 to 100 grams of methamphetamine or heroin would be distributed in furtherance of the conspiracy. In fact the jury convicted Delgado, Amador, and Collazo, of a RICO conspiracy, and found that each had "knowledge that a co-conspirator, not necessarily the defendant, would commit" a conspiracy "to distribute more than 50 grams of pure methamphetamine." SER 2098-2105.[3]

Finally, in addition to the evidence about each Appellant's role in the Mexican Mafia, the jury heard numerous intercepted calls in which several of the Appellants, including Amador and Collazo—the only two sentenced to more than 20 years—personally discussed the distribution of substantial quantities of heroin and methamphetamine in prison. See, e.g., SER 2789 (Amador

---

[3]   Each of these defendants was subject to a statutory maximum life sentence on this count, with or without the § 841(b) finding. See 18 U.S.C. § 1963(a); Cf. *United States v. Buckland*, 289 F.3d 558, 572 (9th Cir. 2002) (*Apprendi* error in failing to charge drug amount "immaterial" when the statutory maxima on all of the counts combined was greater than the sentence imposed).

discussing putting a "piece" [28 grams] in a balloon to be smuggled into prison); 2792 (Amador: "I need a whole piece [28 grams]"); 2795 (Amador and Ballesteros discussing the price of "two pieces [56 grams]"); 2814 (Amador discussing a drug-filled balloon recovered from an inmate that was "as long as like, a whole finger"); SER 2929 (Amador: "They caught him with fifteen grams . . . They caught him with six balloons"); SER 2631 (Collazo discussing the color of the wrapping on a "plug" of heroin); SER 2740 (Collazo discussing the distribution of "six or eight" grams); SER 2830 (Ballesteros explaining that Collazo had permission to "get that piece"); SER 2631 (Collazo: "That's a [successful delivery] homie. The mule wants some of the black [heroin]").

Taken together, the evidence against all four Appellants was sufficient for the jury to find that the requisite amounts of methamphetamine and heroin were both "reasonably foreseeable" *and* within the scope of the agreement *and* distributed in furtherance of the overall conspiracy. This is true, regardless of whether the jury had been instructed using the disjunctive test of *Banuelos*, the conjunctive test from the Guidelines, or some other test based on *Pinkerton* principles. Because the outcome of this case would be the same, regardless of the precise wording of the instruction given, this is not a "case where it matters," and this

Court need not call for initial en banc consideration. *Torres*, 869 F.3d at 1106.

2. If this Court nevertheless elects to consider the issue en banc, the United States agrees that the current disjunctive test defining "relevant conduct" from *Banuelos* should not provide the test for conspirator liability under § 841(b) and § 846. As the concurrence noted in *Torres*, the term "relevant conduct" does not appear anywhere in the statutes. *Id*. at 1106. Instead, the plain language of the drug statute imposes "conspiracy wide" liability, with penalties triggered simply by the amount of drugs "involve[ed]" in the unified conspiracy itself.

The language in § 846 originated in a 1988 amendment that was intended "to assure that all the penalties applicable to an underlying drug offense also apply to an attempt or conspiracy to commit the offense." 134 Cong. Rec. S17, 360-02 (daily ed. November 10, 1988) (statement of Sen. Biden)); see also *United States v. Martinez*, 987 F.2d 920, 925 (2d Cir. 1993). Thus, Section 846 provides that whoever "attempts or conspires" to distribute drugs "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

Those penalties turn on the type and amount of drugs "involv[ed]" in the "violation." 21 U.S.C. § 841(b)(1)(A). For the substantive offense, there is no mens rea attached to the drug type or quantity. *United States v. Jefferson*, 791 F.3d 1013, 1019 (9th Cir. 2015). All that is required is that the offender know that he is distributing a federally controlled substance, and proof that the offense actually "involved" a specific quantity and type of narcotic.

The very same statutory provision governs penalties for conspiracy offenses, as well. "Involving" must therefore have the same meaning. Under the plain statutory text, the sentencing range for a drug-distribution conspiracy is set by the type and amount of drugs that the conspiracy "involve[s]," independent of a conspirator's individual contributions to the conspiracy or what is reasonably foreseeable to him.

The Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625 (2002), supports this interpretation. In *Cotton*, the Supreme Court held that the imposition of life sentences on defendants convicted of conspiracy under Section 846 did not warrant relief under the plain-error standard, even though the drug amount was not alleged in the indictment or found by the jury, as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because "overwhelming" and "essentially uncontroverted" evidence showed

that "the conspiracy involved at least 50 grams of cocaine base." 535 U.S. at 633. The Supreme Court's analysis focused on the drug quantity involved in the conspiracy as a whole. Three separate times, the Court referred to the fact that "the conspiracy involved at least 50 grams of cocaine base." *Id*. at 632 n.2, 633; see *id*. at 633 (evidence "revealed the conspiracy's involvement with far more than 50 grams of cocaine base"); *id*. at 633 n.3 ("the relevant quantity for purposes of *Apprendi*" was the amount of cocaine "that the conspiracy involved"). Nothing in the Court's reasoning suggested that the statutory penalties for the conspiracy would vary for each defendant, depending on what fell within the scope of or was reasonably foreseeable to any given defendant.

The conspiracy-wide approach to sentencing is also consistent with the traditional rule that "a conspiracy is a single, unified offense," *United States v. Pressley*, 469 F.3d 63, 66 (2d Cir. 2006) (per curiam), and thus a single "violation" for purposes of Section 841(b). Relying on this principle, Courts of Appeals have rejected the argument that, when determining the applicable sentencing range under Section 841(b), it is improper to aggregate multiple individual drug sales in furtherance of a single conspiracy. See *United States v. Law*, 528 F.3d 888, 906 (D.C. Cir. 2008); *Pressley*, 469 F.3d at 66 (collecting cases). In line with that

rationale, several courts of appeals have also held that statutory maximum sentences are based upon the amount of drugs in the conspiracy as a whole and are the same for all co-conspirators. See, e.g., *Derman v. United States*, 298 F.3d 34, 42-43 (1st Cir. 2002); *United States v. Turn*er, 319 F.3d 716, 722-23 (5th Cir. 2003); *United States v. Seymour*, 519 F.3d 700, 710 (7th Cir. 2008) ("Once a jury has determined that a conspiracy involved a type and quantity of drugs, and has found a particular defendant guilty of participating in the conspiracy, the jury has established the statutory maximum sentence that any one participant in the conspiracy may receive"); *United States v. Stiger*, 413 F.3d 1185, 1193 (10th Cir. 2005) ("Booker does not alter the well-established rule that a finding of drug type and quantity for the conspiracy as a whole sets the maximum sentence that each coconspirator can constitutionally be given").

It is true that most Circuits have rejected that reading, and have instead held that penalties for co-conspirators can be different, depending on the quantity of drugs that was reasonably foreseeable to the individual defendant. See *United States v. Stoddard*, 892 F.3d 1203, 1219 (D.C. Cir. 2018) (collecting cases). And, in fact, it is now the Department of Justice policy to *charge* drug amounts in conspiracy cases based only on defendant-specific evidence in light

of *Alleyne v. United States*, 570 U.S. 99 (2013). See *Id.* at 121; *United States v. Haines*, 803 F.3d 713, 741 (5th Cir. 2015); *United States v. Young*, 847 F.3d 328, 366 (6th Cir. 2017). Nevertheless, those cases that have applied defendant-specific limitations—like this Court's decision in *Banuelos*—are not based on any language in Sections 841 or 846; nothing in the drug statutes indicates that a conspiracy is a single, unified offense for one conspirator, but a different offense for another conspirator.

Rather than relying on statutory language to support the defendant-specific approach to mandatory-minimum sentences in drug-conspiracy cases, the Courts of Appeals have instead relied either on (1) general principles of conspiratorial liability set forth in *Pinkerton* or (2) the definition of relevant conduct set forth in the Sentencing Guidelines. See, e.g. *United States v. Pizarro*, 772 F.3d 284, 287 (1st Cir. 2014); *United States v. Haines*, 803 F.3d 713, 741 (5th Cir. 2015); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Stoddard*, 892 F.3d 1203, 1220 (D.C. Cir. 2018). It is far from clear, however, why either of these would provide the correct standard for § 841(b) liability.

First, *Pinkerton* does not cabin a co-conspirator's liability for the inchoate offense of conspiracy, which "is a distinct offense from the completed object of the conspiracy." *Garrett v. United States*,

471 U.S. 773, 778 (1985). A drug conspirator's liability rests on his agreement, and once it is established that he knowingly and voluntarily joined a conspiratorial agreement, he is liable for the full scope of the conspiracy he joined. See *United States v. Jimenez Recio*, 537 U.S. 270, 274-75 (2003) (conspiracy may be proved based on the unlawful agreement, regardless of whether the substantive offense is committed); *United States v. Shabani*, 513 U.S. 10, 13-14 (1994) (holding that no overt act is necessary for conspiracy liability under Section 846). Instead of limiting a conspirator's liability for an illegal agreement, *Pinkerton* expands a conspirator's liability beyond that agreement—to include the substantive offenses committed by his co-conspirators that are reasonably foreseeable and in furtherance of the conspiracy. 328 U.S. at 647-48.

Thus, while the principle of reasonable foreseeability set forth in *Pinkerton* is "relevant when a conspirator is charged with a substantive offense arising from the actions of a coconspirator," it is not relevant "when a conspirator is charged with conspiracy." *United States v. Collins*, 415 F.3d 304, 313 (4th Cir. 2005). In other words, the concept of reasonable foreseeability in *Pinkerton* cannot reduce the scope of a conspirator's liability for the conspiracy itself. To the contrary, the Supreme Court made clear that conviction for conspiracy does not preclude conviction for the underlying

substantive offense, and vice versa. *Pinkerton v. United States*, 328 U.S. 640, 643 (1946). Accordingly, "[a]lthough a 'small-time' drug seller may not be responsible for all the transactions or actions of his associates, he is responsible for the conspiracy in which he participated." *United States v. Robinson*, 547 F.3d 632, 639 (6th Cir. 2008).

Second, the Supreme Court has rejected the notion that the Sentencing Guidelines can limit clear statutory language. See, e.g., *Neal v. United States*, 516 U.S. 284 (1996) (rejecting argument that method for calculating drug weight for purposes of the Guidelines "should also control the mandatory minimum calculation"); *Kimbrough v. United States*, 552 U.S. 85, 104 (2007) (citing *Neal* and "emphasizing that the Commission had not purported to interpret the statute"); see also *Smith v. United States*, 508 U.S. 223, 231 (1993) (describing as "dubious" the assumption that the meaning of a statute's text can be deduced from different language in the Guidelines). And, the argument that a Guidelines provision should limit the language of Section 841 has even less force here, since as the concurrence noted in *Torres*, "relevant conduct" is a "Guidelines term not found in § 841(b)." 869 F.3d at 1008.

In short, a plain reading of § 841(b) and § 846 sets penalties based on the total amount of narcotics "involved" in the conspiracy,

even if that amount is beyond the scope of the defendant's individual participation. Therefore, if this Court elects to revisit *Banuelos* en banc, the appropriate jury instruction for § 846 and § 841(b) requires only (1) that the defendant was guilty of participating in a conspiracy, and (2) that the conspiracy involved a type and quantity of drugs sufficient to trigger the statutory maximum and mandatory minimum sentence. No further individualized determination is required.

Respectfully submitted,

ROBERT S. BREWER, JR.
*United States Attorney*

HELEN H. HONG
*Assistant U.S. Attorney*
*Chief, Appellate Section*
*Criminal Division*

S/ DANIEL E. ZIPP
*Assistant U.S. Attorney*

AUGUST 12, 2019.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 15-50509, 16-50048, 16-50117, 16-50195, 16-50345

I am the attorney or self-represented party.

**This brief contains** | 4,139 | **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated | Jun 20, 2019 | .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Daniel E. Zipp | **Date** | Aug 12, 2019

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          *Rev. 12/01/2018*