Nos. 15-50509, 16-50048, 16-50117, 16-50195, 16-50345

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JULIO RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of California
Honorable Roger T. Benitez, District Judge, Presiding

APPELLANTS' COURT-ORDERED BRIEF REGARDING
INITIAL EN BANC CONSIDERATION

JOHN C. LEMON
1350 Columbia Street, Suite 600
San Diego, California 92101
(619) 794-0423

Attorney for Mr. Rodriguez

# Table of Contents

Introduction and Rule 35(b) Statement ............................................ 1

Background ................................................................................... 4

Argument ..................................................................................... 8

I.    Although this Court has repeatedly stated that the tests for
      determining drug quantity under § 841(b) and the sentencing
      guidelines should be the same, some of the Court's opinions are
      inconsistent and contain "undermined logic"; en banc review is
      accordingly necessary to "sort the whole mess out." ................. 8

II.   The conjunctive formulation is the proper instruction for
      coconspirator liability in drug cases because the guidelines and
      section § 841(b) were promulgated together and applying a less
      demanding standard for constitutionally required findings under
      § 841(b) is inconsistent with federal sentencing objectives and
      unworkable in practice. ............................................................. 13

      A.    The Supreme Court held in *Dorsey v. United States* that
            § 841(b) and the guidelines should be interpreted consistently
            in order to promote uniformity in sentencing. .................. 13

      B.    Both constitutional and practical considerations – particularly
            after *Dorsey* – militate toward applying the same standard
            under both § 841(b) and the guidelines. .......................... 14

      C.    Applying any other less demanding standard for coconspirator
            liability in drug cases is incompatible with both *Dorsey* and
            proportionality in sentencing. ........................................ 16

Conclusion ................................................................................... 19

Certificate of Related Cases ........................................................ 20

Certificate of Compliance ........................................................... 21

# Table of Authorities

*Alleyne v. United States,*
    570 U.S. 99 (2013)                18

*Apprendi v. New Jersey,*
    530 U.S. 466 (2000)           15, 18

*Burrage v. United States,*
    134 S. Ct. 881 (2014)         15, 18

*Dorsey v. United States,*
    567 U.S. 260 (2012)          13-18

*Honeycutt v. United States,*
    137 S. Ct. 1626 (2017)       17

*Pinkerton v. United States,*
    328 U.S. 640 (1946)         17-18

*United States v. Banuelos,*
    322 F.3d 700 (9th Cir. 2003)    9-12

*United States v. Becerra,*
    992 F.2d 960 (9th Cir. 1993)    8-14

*United States v. Jauregui,*
    918 F.3d 1050 (9th Cir. 2019)    10

*United States v. Mesa-Farias,*
    53 F.3d 258 (9th Cir. 1995)     9

*United States v. Ortiz,*
    362 F.3d 1274 (9th Cir. 2004)    10

*United States v. Shabani,*
    513 U.S. 10 (1994)           18

*United States v. Torres,*
    869 F.3d 1089 (9th Cir. 2017)            passim

**Statutes**

21 U.S.C. § 841(b)             passim

**Sentencing Guidelines**

USSG § 1B1.3(a)(1)(B)          1-2

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | U.S.C.A. No. 16-50117 |
| | ) | |
| Plaintiff-Appellee, | ) | U.S.D.C. No. 13cr4514-BEN |
| | ) | |
| v. | ) | |
| | ) | |
| JULIO RODRIGUEZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

**Introduction and Rule 35(b) Statement**

The appellants in this consolidated appeal were subjected to both

mandatory-minimum sentences under 21 U.S.C. § 841(b) and enhancements under

the sentencing guidelines, which were based on drugs that were distributed by their

coconspirators. This Court has consistently held that the test for coconspirator

liability in a drug case should be the same under § 841(b) as it is under the

sentencing guidelines, which now require the conduct of coconspirators to be

"within the scope of the jointly undertaken criminal activity, in furtherance of that

criminal activity, and reasonably foreseeable in connection with that criminal

activity."[1]

---

[1]    USSG § 1B1.3(a)(1)(B) (2015).

The appellants accordingly argued to the district court that – consistent with the sentencing guidelines – it was required to instruct the jury that a drug quantity attributable to an individual defendant must be *both* jointly undertaken in furtherance of that defendant's agreement *and* reasonably foreseeable to that defendant (i.e., the "conjunctive formulation").[2] The district court refused. It instead instructed the jury in the "disjunctive" regarding coconspirator liability. That is, whether certain drug types and quantities were *either* "reasonably foreseeable" to an individual defendant *or* "fell within the scope of his particular agreement."

In supplemental opening and reply briefs filed by Julio Rodriguez (and joined by the others), the appellants renewed their arguments on direct appeal. On June 20, 2019 (after oral argument), this Court ordered the parties to file "simultaneous briefs . . . setting forth their respective positions on whether the case should be heard initially en banc. Specifically, we ask the parties to address the proper jury instruction under 21 U.S.C. § 841(b) for determining the drug type and quantity involved in a conspiracy offense."

---

[2]     The trial took place before the 2015 guidelines amendment. The appellants accordingly asked the district court to instruct the jury consistent with the 2014 version of the guidelines, which limited coconspirator liability to "all reasonably foreseeable acts . . . of others in furtherance of the jointly undertaken criminal activity." USSG § 1B1.3(a)(1)(B) (2014).

The correct jury instruction for determining coconspirator liability for drug quantities is obviously a significant issue. Violations of sections 841 and 846 are among the most frequently prosecuted federal offenses and the potential consequences for defendants are extreme – mandatory decades and even life in prison. Indeed, at least three members of this Court have recognized as much and opined that this issue should be resolved by the Court sitting en banc.[3] The question presented is thus of "exceptional importance" and en banc consideration "is necessary to secure or maintain uniformity of the court's decisions." Fed. R. App. P. 35(a). Julio Rodriguez accordingly submits this supplemental brief on behalf of all the appellants in this consolidated appeal.

---

[3] *United States v. Torres,* 869 F.3d 1089, 1106 (9th Cir. 2017) (maj. op.) ("en banc review will likely be necessary to sort the whole mess out"); *id.* at 1098 (Ikuta, J., concurring specially) (the situation "is far from satisfactory and we should consider revisiting this issue en banc").

3

## Background

The two-count indictment charged the appellants with participating in a RICO conspiracy (with the primary object of distributing methamphetamine and heroin) and a drug-trafficking conspiracy involving methamphetamine and heroin. The gist of it was that the appellants – all of whom were inmates at different California state prisons during the relevant period – were associates of the Mexican Mafia who distributed drugs in prison in furtherance of a wide-ranging criminal enterprise.

Julio Rodriguez grew up in poverty in Oceanside, California. He joined a Hispanic street gang and was a heroin addict by the age of 15. Like the other appellants, his alleged involvement in the charged conspiracies occurred exclusively while he was an inmate in state prison.

Unlike the other appellants, however, Rodriguez was *not* recorded on an illegal cell phone doing drug deals while in prison. Instead, the government alleged that Rodriguez's wife smuggled drugs into prison for him, which he then allegedly distributed to others. And although Rodriguez's wife cooperated and testified against him at trial, the government never asked her how many times she actually smuggled drugs into prison for her husband.

That was significant because Rodriguez's principal defense at trial was that

he did not distribute 100 grams or more of heroin because the heroin his wife smuggled into prison for him was for his personal use.[4] Specifically, Rodriguez argued that, because of his addiction, he consumed copious amounts of heroin (at least four-to-five grams) every day. To that end, he presented the testimony of several witnesses who were familiar with his debilitating addiction, including his wife (a licensed vocational nurse who, before Rodriguez was incarcerated, used to inject him) and the expert testimony of a narcotics-dependency specialist.

Rodriguez's alleged role in the conspiracy is especially significant – vis-a-vis the scope of his particular agreement – because the government had alleged a far-flung and loosely organized plan to smuggle drugs into several state prisons and county jails. It involved at least 20 coconspirators (some charged in related indictments) and any number of unindicted coconspirators, some of whom were on the streets while others were housed in other prisons and jails.

In the event that the jury found a defendant guilty of the drug conspiracy charged in Count 2, it was required to make special findings regarding drug type

---

[4] Rodriguez's defense to the methamphetamine allegations was that he had nothing to do with methamphetamine and the jury agreed – answering the methamphetamine questions on the special verdict form in the negative.

and quantity.[5] Over the defendants' objections, the court instructed the jury that it should make those findings based on quantities that were *either* "reasonably foreseeable" to an individual defendant *or* that "fell within the scope of his particular agreement."[6]

This ruling was significant because the jury could find – under the disjunctive instruction – that Rodriguez was liable for at least 100 grams of heroin based on the conduct of coconspirators that was reasonably foreseeable to him but *not* within the scope of his particular agreement. In other words, the jury could find him liable for 100 grams or more based on the conduct of alleged coconspirators other than those that were working with Rodriguez and his wife (i.e., coconspirators who distributed heroin in other prisons and jails).

Rodriguez was convicted of both counts but the jury answered the special

---

[5] With respect to Count 1, the jury was required to make a special finding as to whether "the government has proven beyond a reasonable doubt that the defendant's agreement included the knowledge that a co-conspirator . . . would commit the following racketeering act in furtherance of the RICO conspiracy: conspiracy to distribute more than 50 grams of pure methamphetamine or 500 grams of a mixture containing methamphetamine."

[6] As set forth in the opening and reply briefs, the defendants specifically objected to the court's jury instructions after receiving a jury note. Counsel for Rodriguez and Amador explicitly identified this issue, cited the relevant authorities, and requested that the court instruct the jury in the conjunctive. *See* Rodriguez Supp. AOB at 7-10.

interrogatories regarding methamphetamine (for both counts) in the negative. With respect to Count 2, however, the jury found that the amount of heroin attributable to Rodriguez was 100 grams or more.

As a result of the jury's findings then, Rodriguez was subject to a 20-year maximum sentence on Count 1 and a five-year mandatory minimum and 40-year maximum on Count 2. At sentencing, the district court relied on the jury's findings to establish a base-offense level 24 under the guidelines. After applying a two-level increase for distribution in prison and another two-level increase for aggravating role, the court imposed the high end of 175 months.

Rodriguez briefed this issue in his supplemental briefs for all the appellants in this consolidated appeal. This Court heard oral argument on February 6, 2019. On June 20, the panel ordered the parties to file concurrent supplemental briefs regarding an initial hearing en banc.

## Argument

**I.      Although this Court has repeatedly stated that the tests for determining drug quantity under § 841(b) and the sentencing guidelines should be the same, some of the Court's opinions are inconsistent and contain "undermined logic"; en banc review is accordingly necessary to "sort the whole mess out."**

The majority and concurring opinions in *United States v. Torres* – both of which recommend en banc review – set forth the history of this Court's precedent interpreting the requirements for finding drug type and quantity in conspiracy cases.[7]   In brief, this Court held in *United States v. Becerra* that drug quantity determinations under § 841(b) should be the same as under the sentencing guidelines, which – at the time that the appellant in *Becerra* was sentenced – required the "disjunctive formulation."[8]   In arriving at that conclusion, the *Becerra* Court expressly rejected the government's argument that the analysis should be different:

> We reject the government's argument that sentencing under the statutory mandatory minimums should differ from the Guidelines. . . . We see no reason why sentencing under the statutory mandatory minimums should differ.  They are, in essence, part of the Guidelines scheme.[9]

---

[7]      *See* 869 F.3d at 1096-1100 (Ikuta, J. concurring specially); 1104-06 (maj. op.).

[8]      992 F.2d 960, 967 (1993).

[9]      *Id.* at 967, n.2.

8

For the most part, this Court has applied *Becerra's* logic throughout its subsequent holdings while at the same time overlooking the revision to the guidelines amendment that replaced the disjunctive formulation with the conjunctive. For example, in *United States v. Mesa-Farias,* the Court stated that *Becerra* "required . . . that sentencing for conspiracy be the same under § 841(b) as under the Sentencing Guidelines."[10] Similarly, in *United States v. Banuelos,* this Court again remarked that it was "well-settled" that the rule is the same under both the guidelines and Title 21.[11]

This is where things begin to get complicated however, because the *Banuelos* court also – erroneously – observed that "[i]t is well settled that . . . the district court is required to determine the quantity of drugs the conspirator reasonably foresaw or which fell within the scope of his particular agreement with the [co]conspirators."[12] In fact, as the *Torres* majority points out, by the time *Banuelos* was decided "the Guidelines had already been amended in 1992 to require that defendants be held accountable only for the conduct of others that was both '(i) in furtherance of the jointly undertaken criminal activity; and (ii)

---

[10]    53 F.3d 258, 260 (9th Cir. 1995).

[11]    322 F.3d 700, 704 (9th Cir. 2003).

[12]    *Id.* at 702 (quotations and citations omitted).

9

reasonably foreseeable in connection with that criminal activity.'"[13]

This significant change in the guidelines was first recognized by this Court in *United States v. Ortiz,* where the Court wrote "to clarify the proper standard for determining relevant conduct" and concluded that it must be "*both* in furtherance of jointly undertaken activity *and* reasonably foreseeable."[14] *Ortiz* was only a guidelines case, however, and did not address the appropriate standard under § 841(b).[15]

This Court has thus "clearly held, on at least three separate occasions, that the same approach should be applied when analyzing culpability under § 841(b) as is applied under the Guidelines,"[16] which now require the conjunctive formulation. The appellants' "straightforward" argument here is accordingly the same as in

---

[13]     869 F.3d at 1105.  Since *Torres,* Judge Berzon has also written separately to "suggest that this court reconsider *Banuelos* en banc" but for a different reason: because *Banuelos* "imported the test for *Pinkerton* liability . . . into the determination of whether a defendant can be held liable for the crime of conspiracy itself, thereby conflating liability for the crime of conspiracy and for substantive crimes committed by the conspiracy."  *United States v. Jauregui,* 918 F.3d 1050, 1062 (9th Cir. 2019) (Berzon, J., concurring).

[14]     362 F.3d 1274, 1275 (9th Cir. 2004).

[15]     *Torres,* 869 F.3d at 1105.

[16]     *Id.*

*Torres*:[17]

> If [this Court's] holdings in *Becerra, Mesa-Farias,* and *Banuelos*
> require that the same standard be applied when sentencing for a
> conspiracy under § 841(b) as under the Guidelines . . . then when
> *Ortiz* changed the test to be applied under the Guidelines, it also
> changed the test to be applied under § 841(b). *That is a strong
> argument.*[18]

And although the *Torres* majority declined to reach the issue because the

error was not preserved in that case, it concluded that this Court should decide this

question en banc:

> [E]n banc review will likely be necessary to sort the whole mess out.
> As the special concurrence points out, there are other reasons to revisit
> some of the issues raised in *Becerra* and *Banuelos*. Even if we decide
> to maintain the result of *Banuelos,* that the disjunctive formulation
> should be applied to sentencing under § 841(b), we would have an
> opportunity to give reasoning for that result that makes more sense
> than our current undermined logic.[19]

Similarly, although Judge Ikuta concurred specially in *Torres* to express her

view that "there has been no intervening controlling authority overruling our

interpretation of § 841(b) in *Banuelos,*" she too recommended hearing en banc:

> [A]pplying *Becerra* in this context is far from satisfactory, and we
> should consider revisiting this issue en banc. Because *Banuelos* relied

---

[17]     Unlike in *Torres,* however, the appellants' argument here is preserved
and therefore subject to de novo review.

[18]     *Id.* (emphasis added).

[19]     *Id.* at 1106.

on *Becerra,* and *Becerra* relied on the Guidelines, the rationale underlying the interpretation of § 841(b) in *Becerra* and *Banuelos* has been undermined. Moreover, *Becerra's* reasoning is not persuasive. Among other things, we have not yet explained how our standard is consistent with the plain text of § 841(b) . . . [and] we have not provided a reasoned explanation of why our general principles for determining co-conspirator liability do not apply to drug quantity determinations.[20]

In the simplest terms, this Court in *Becerra* stated plainly that the test for coconspirator liability in this context should be the same under § 841(b) as it is under the guidelines. And this Court reiterated that view in *Banuelos*. But the *Banuelos* court (presumably) unwittingly[21] cited the disjunctive guidelines standard from *Becerra,* which had by then been changed to the conjunctive formulation. And there is divided opinion in this circuit as to which part of *Banuelos* (i.e., the statement that the two tests should be the same or the statement that the test for § 841(b) is disjunctive) is controlling.[22] En banc review is indeed "necessary to sort this whole mess out."

---

[20]    *Id.* at 1098-99 (Ikuta, J., concurring specially).

[21]    *See id.* at 1106.

[22]    *See id.* at 1098 (Ikuta, J., concurring specially) (concluding that "there has been no intervening controlling authority overruling our interpretation of § 841(b) in *Banuelos*"); *id.* at 1106 ("the reasoning of *Banuelos* in favor of the disjunctive formulation has been completely undermined").

**II.** **The conjunctive formulation is the proper instruction for coconspirator liability in drug cases because the guidelines and § 841(b) were promulgated together and applying a less demanding standard for constitutionally required findings under § 841(b) is inconsistent with federal sentencing objectives and unworkable in practice.**

A. *The Supreme Court held in* Dorsey v. United States *that § 841(b) and the guidelines should be interpreted consistently in order to promote uniformity in sentencing.*

In 1986, Congress enacted § 841(b), which provided for new, mandatory-minimum sentences.[23] The Sentencing Commission promptly incorporated the new "mandatory minimums into the first version of the Guidelines themselves."[24] "It did so by setting a base offense level for a first-time drug offender that corresponded to the lowest Guidelines range above the applicable mandatory minimum."[25]

In *Dorsey v. United States,* the Supreme Court addressed the interaction between the guidelines and § 841(b) and concluded that the two should be interpreted consistently, so as not to "undermine basic Federal Sentencing Guidelines objectives such as uniformity and proportionality in sentencing."[26] And

---

[23]    *Dorsey v. United States,* 567 U.S. 260, 266 (2012).

[24]    *Id.* at 266-67.

[25]    *Id.* at 267.

[26]    *Id.* at 264.

13

it rested that statutory construction "upon an analysis of the Guidelines-based sentencing system Congress has established [and] how the Guidelines interact with federal statutes setting forth specific terms of imprisonment."[27]

The Supreme Court's conclusion in *Dorsey* – that § 841(b) and the guidelines should be interpreted consistently in order to promote uniformity and proportionality – echoes this Court's analysis in *Becerra*[28] and weighs heavily in favor of applying the same standard for coconspirator liability under both the guidelines and § 841(b).

B.    *Both constitutional and practical considerations – particularly after* Dorsey *– militate toward applying the same standard under both § 841(b) and the guidelines.*

As a threshold matter, the mandatory minimums in § 841(b) are onerous and have been criticized by several commentators as unduly harsh.[29]  Moreover, the type and quantity of a controlled substance (when it triggers a mandatory minimum

---

[27]    *Id.* at 264-65.

[28]    *See* 992 F.2d at 967, n.2. ("We see no reason why sentencing under the statutory mandatory minimums should differ.  They are . . . part of the Guidelines scheme.").

[29]    *See, e.g.,* Associate Justice Anthony M. Kennedy, Speech at the American Bar Association Annual Meeting (Aug. 9, 2003); *In re Ellis,* 356 F.3d 1198, 1220 (9th Cir. 2004) (en banc) (Kozinski, J., concurring) ("our most distinguished jurists and commentators have spoken out against the Procrustean regime of mandatory minimum sentences").

or increased maximum) is an element of the offense, subject to the beyond-a-reasonable-doubt standard articulated in *Apprendi v. New Jersey.*[30] Particularly with the benefit of the Supreme Court's guidance in *Dorsey,* it makes no sense to apply a lesser standard when making constitutionally required findings – which trigger harsh mandatory-minimum sentences – than the one required for making guidelines calculations. Again, the aim is to *avoid* unwarranted disparities. Certainly, the rule of lenity supports the conjunctive formulation.[31]

Second, applying a lesser standard is simply unworkable in practice. Rodriguez's case is a good example. Here, the jury was required to apply the less rigorous, disjunctive test under the most demanding standard of proof (beyond a reasonable doubt) in order to arrive at a quantity to establish the statutory maximum and any mandatory minimum. The jury concluded that Rodriguez was responsible for more than 100 grams of heroin, which tripped a five-year mandatory minimum and a 40-year maximum.

Then, notwithstanding the jury's findings, the district court was – ostensibly – required to apply the more exacting, conjunctive test under the least demanding standard of proof (preponderance) in order to arrive at the base-offense level under

---

[30]    530 U.S. 466 (2000).

[31]    *See Burrage v. United States,* 134 S. Ct. 881, 891 (2014).

15

the guidelines. It was hardly coincidental, then, that the court arrived at the base-offense level corresponding to the 100 grams of heroin found by the jury and that the only argument at sentencing was whether the court should *increase* that base-offense level under the guidelines.

Put another way, a jury's beyond-a-reasonable-doubt finding does not just establish the mandatory minimum and statutory maximum. It will also always establish the "floor" under the guidelines. Accordingly, absent comity between § 841(b) and the guidelines, the guidelines' conjunctive standard will apply only to findings that increase the offense level beyond the floor arrived at by the jury under the disjunctive (or any other lesser) standard.

C.    *Applying any other less demanding standard for coconspirator liability in drug cases is incompatible with both* Dorsey *and proportionality in sentencing.*

In *Torres,* Judge Ikuta expresses misgivings about applying a guidelines standard for liability when "the plain text of § 841(b) . . . requires a court to first identify the violation of § 841(a) at issue and then determine whether that violation was 'involving' specified quantities of drugs."[32] She goes on to state that this Court has "not provided a reasoned explanation of why our general principles for

---

[32]    869 F.3d at 1098-99 (Ikuta, J., concurring specially).

determining co-conspirator liability [e.g., *Pinkerton*[33]] do not apply to drug quantity determinations."[34]  This argument appears to be based on Judge Ikuta's reading of *United States v. Liquori,* where this Court stated that "nothing in the guidelines requires us to apply guideline definitions in construing a federal sentencing statute."[35]

*Liquori,* however, has been undermined – if not completely overruled – by *Dorsey,* which requires § 841(b) and the guidelines to be read consistently in order to promote uniformity and proportionality in sentencing.  Additionally, in *Honeycutt v. United States,* the Supreme Court recently rejected the argument that Congress is presumed to have incorporated the *Pinkerton* standard when it enacted Title 21.[36]

Although *Honeycutt* was a forfeiture case addressing § 853, its analysis applies with even greater force to § 841(b) because *Pinkerton* was decided in 1946 – decades before the relatively recent phenomenon of mandatory minimums.  The *Pinkerton* Court could not have considered the propriety of a toothless, reasonably-

---

[33]     *Pinkerton v. United States,* 328 U.S. 640 (1946).

[34]     *Id.* at 1099.

[35]     *Id.* at 1098 (quoting *Liquori,* 5 F.3d 435, 438 (9th Cir. 1993)).

[36]     137 S. Ct. 1626, 1634 (2017) ("The plain text and structure of § 853 leave no doubt that Congress did not incorporate [*Pinkerton*].")

foreseeable standard in this context. Furthermore, *Pinkerton* relied on the overt-act requirement of the different conspiracy offense at issue in that case.[37] Section 846 does not have an overt-act requirement,[38] however, rendering *Pinkerton* liability inapplicable under § 841(b). Finally, even if there were doubt, the rule of lenity again supports the conjunctive formulation.[39]

Applying the same standard under both the guidelines and § 841(b) is, in practice, the only workable option. It is also required under *Dorsey* and consistent with the Sixth Amendment, as articulated in *Apprendi* and *Alleyne v. United States*.[40] The conjunctive formulation is the proper instruction.

---

[37]    328 U.S. at 647.

[38]    *See United States v. Shabani,* 513 U.S. 10 (1994).

[39]    *See Burrage,* 134 S. Ct. at 891.

[40]    570 U.S. 99, 116 (2013) ("facts that increase mandatory minimum sentences must be submitted to the jury").

## Conclusion

The *Torres* majority concluded by expressing its concern "about the state of our caselaw":

> As it stands, our precedent either is in conflict or calls for us to apply the disjunctive formulation to sentencing under § 841(b) and the conjunctive formulation under the Guidelines, even though we adopted the disjunctive formulation under § 841(b) in the first place to make the two approaches identical. That inconsistency cannot stand. In a case where it matters, it should be addressed en banc.[41]

Julio Rodriguez was subjected to a mandatory minimum and an enhanced base-offense level, both of which were likely based on the conduct of his coconspirators. And although that conduct may – arguably – have been reasonably foreseeable, it was not within the scope of his particular agreement. The issue is preserved, this is a case where it matters, and this Court should address it en banc.

Respectfully submitted,

Dated: August 12, 2019

/s John C. Lemon
1350 Columbia Street, Suite 600
San Diego, California 92101

Attorney for Mr. Rodriguez

---

[41]     869 F.3d at 1108.

### Certificate of Related Cases

Undersigned counsel is aware of the following related cases (in addition to co-appellants joining this brief):

- United States v. Garibay, 16-50098

- United States v. Ruvalcaba-Morales, 15-50563


Respectfully submitted,


Dated: August 12, 2019                    /s John C. Lemon
                                          JOHN C. LEMON

**Certificate of Compliance**

Consistent with this Court's order, the body of this supplemental brief is less than 20 pages.

Date: August 12, 2019        s/ John C. Lemon
                             JOHN C. LEMON