**Nos. 15-50509, 16-50048, 16-50117, 16-50195, 16-50345**

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

v.

**ROBERT COLLAZO, LINO DELGADO-VIDACA, JULIO
RODRIGUEZ, STEVEN AMADOR, ISSAC BALLESTEROS**

Defendants-Appellants.

_____

Appeal from the
United States District Court
for the Southern District of California
Honorable Roger T. Benitez Presiding

_____

**Brief of Amici Curiae Ninth Circuit Federal Public
and Community Defenders in Support of the Defendant-
Appellants During Pendency of Rehearing En Banc**

_____

KIMBERLY S. TRIMBLE
VINCENT J. BRUNKOW
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
Attorneys for Amicus Curiae

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF INTEREST OF AMICI & DISCLOSURE STATEMENT ................................................................................ 1

SUMMARY OF THE ARGUMENT ......................................................... 2

ARGUMENT ........................................................................................ 6

    I.    Traditional conspiracy law requires that a jury must find that the defendant had the specific intent to commit an offense involving a specified drug type/quantity to trigger the enhanced penalties for a drug conspiracy offense ........................................................... 6

        A.    Traditional conspiracy law requires proof that a defendant specifically intended to accomplish the object of the conspiracy .................................................... 8

        B.    The specific intent to commit the offense that is the object of the conspiracy requires proof of knowledge of all elements of the substantive offense, which includes drug type and quantity for federal drug conspiracy offenses ............................ 11

    III.    The Government's suggested standard is inconsistent with traditional conspiracy law and the Sixth Amendment because it would punish a defendant for all drug types and quantities that were "involved" in a broad conspiracy even if those drug types and quantities were not intended, known, or even reasonably foreseen by a particular defendant. ................... 18

# TABLE OF CONTENTS

Page

IV. Following the Supreme Court's decision in *Rehaif*, this Court must reexamine prior precedent and hold knowledge of drug type and quantity are elements of substantive federal drug offenses, which means knowledge of drug type/quantity must also be proven for drug conspiracy offenses. ................................................. 24

    A. When disagreeing with prior precedent in his concurrence in *Jefferson*, Judge Fletcher correctly applied a presumption of a mens rea requirement to conclude that the draconian penalties for drug offenses cannot be imposed without knowledge of specified drug types and quantities. ............................ 25

    B. This Court must now overrule *Jefferson* for the reasons expressed in Judge Fletcher's concurrence and recently embraced by the Supreme Court in *Rehaif*. ............................................ 28

        1. Following *Rehaif*, the mens rea for an offense must apply to <u>all</u> material elements. ..... 28

        2. *Jefferson* is clearly irreconcilable with *Rehaif*'s requirement that the mens rea for an offense applies to all material elements. ....... 32

        3. Nothing in the drug statutes contradict the requirement that the mens rea must apply to the material elements of drug type and quantity. ............................................................... 34

CONCLUSION ................................................... 35

ADDITIONAL COUNSEL ...................................... 36

CERTIFICATE OF COMPLIANCE ........................ 38

# TABLE OF AUTHORITIES

**Federal Cases**                                                    **Page(s)**

*Alleyne v. United States,*
  570 U.S. 99 (2013) ..................................................... 2, 12, 13, 22, 27

*American Tobacco Co. v. United States,*
  328 U.S. 781 (1946) ........................................................ 9, 19

*Apprendi v. New Jersey,*
  530 U.S. 466 (2000) ........................................................ 13, 27

*Flores-Figueroa v. United States,*
  556 U.S. 646 (2009) ........................................................... 31

*Garrett v. United States,*
  471 U.S. 773 (1985) ............................................................. 6

*Iannelli v. United States,*
  420 U.S. 770 (1975) ............................................................. 6

*Ingram v. United States,*
  360 U.S. 672 (1959) ............................................................ 25

*Pinkerton v. United States,*
  328 U.S. 640 (1946) ............................................................ 7, 20, 22

*Rehaif v. United States,*
  139 S. Ct. 2191 (2019) ........................................................ *passim*

*United States v. Alghazouli,*
  517 F.3d 1179 (9th Cir. 2008) ........................................ 25

*United States v. Banuelos,*
  322 F.3d 700 (9th Cir. 2003) ............................................... 3

*United States v. Buckland,*
  289 F.3d 558 (9th Cir. 2002) (en banc) ................................ 12-13, 35

*United States v. Burwell,*
  690 F.3d 500 (D.C. Cir. 2012) (en banc) .................................... 27, 33

*United States v. Callanan,*
    364 U.S. 587 (9th Cir. 1961) ............................................................... 9

*United States v. Dado,*
    759 F.3d 550 (6th Cir. 2014) ........................................................... 34

*United States v. Escobar de Bright,*
    742 F.2d 1196 (9th Cir. 1984) ........................................................... 8

*United States v. Hunt,*
    656 F.3d 906 (9th Cir. 2011) ...................................................... 13-14

*United States v. Jauregui,*
    918 F.3d 1050 (9th Cir. 2019) ..................................................... 8, 20

*United States v. Jefferson,*
    791 F.3d 1013 (9th Cir. 2015) .................................................. *passim*

*United States v. Johnston,*
    789 F.3d 934 (9th Cir. 2015) ........................................................... 10

*United States v. Kim,*
    65 F.3d 123 (9th Cir. 1995) ...................................................... 24, 35

*United States v. Krasovich,*
    819 F.2d 253 (9th Cir. 1987) ....................................... 8, 9, 10, 15, 17

*United States v. Melchor-Lopez,*
    627 F.2d 886 .................................................................................. 25

*United States v. Montgomery,*
    150 F.3d 983 (9th Cir. 1998) ...................................................... 2, 26

*United States v. Schmidt,*
    947 F.2d 362 (9th Cir. 1991) ........................................................... 24

*United States v. Stoddard,*
    892 F.3d 1203 (D.C. Cir. 2018) ..................................................... 22

*United States v. U.S. Gypsum Co.,*
    438 U.S. 422 (1978) .............................................................. 8, 19, 27

iv

*United States v. Umagat,*
  998 F.2d 770 (9th Cir. 1993) .................................................... *passim*

**Federal Statutes**

18 U.S.C. § 922 ................................................... 28, 30, 31, 35

18 U.S.C. § 924 ........................................................ 28, 30, 34

21 U.S.C. § 841 ..................................................... *passim*

21 U.S.C. §§ 846 ........................................................ 2, 7, 26

21 U.S.C. § 960 ..................................................... *passim*

21 U.S.C. § 963 ........................................................... 2, 26

**United States Sentencing Guidelines**

U.S.S.G. § 1B1.3 .......................................................... 3

**Other**

ALI, Model Penal Code § 2.02(4), p. 22 (1985)) Penal Code § 2.02 ..... 30

Black's Law Dictionary 1547 (10th ed. 2014) ................................ 29, 30

*Developments in the Law—Criminal Conspiracy,*
  72 Harv. L. Rev. 920 (1959) ......................................... *passim*

O. Holmes, The Common Law 3 (1881) .................................... 32

2 Wayne R. LaFave, *Substantive Criminal Law*
  § 12.2(c)(2) (3d ed. 2017) ....................................... 9

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff-Appellee,<br><br>v.<br><br>ROBERT COLLAZO, LINO DELGADO-VIDACA, JULIO RODRIGUEZ, STEVEN AMADOR, ISSAC BALLESTEROS<br><br>           Defendant-Appellant. | U.S.C.A. Nos. 15-50509, 16-50048, 16-50117, 16-50195, 16-50345<br>U.S.D.C. No. 13-cr-4514-BEN<br><br>Brief of Amici Curiae Ninth Circuit Federal Public and Community Defenders in Support of the Defendant-Appellants During Pendency of Rehearing En Banc |

## STATEMENT OF INTEREST OF AMICI & DISCLOSURE STATEMENT

The Ninth Circuit Federal Public and Community Defenders ("Amici") represent indigent defendants in this Court. As the institutional defenders for indigent defendants, these organizations have an interest in all federal criminal law issues. These organizations defend clients charged with drug conspiracy offenses. They believe that the outcome in this case will significantly affect their clients' right to receive fair trials when they are charged with drug conspiracy offenses and fair sentences when they are convicted of drug conspiracy offenses.

1

Amici affirm that no publicly held corporation owns stock in them. No counsel for either party authored this brief in whole or in part. And no party, party's counsel, person, or other entity contributed money to preparing this brief.

All parties have consented to this brief's filing.

## SUMMARY OF THE ARGUMENT

Federal law pegs the statutory sentencing range for drug offenses to the drug type and quantity involved in the offense. *See* 21 U.S.C. §§ 841(b), 960(b). Because drug type and quantity fix both the statutory maximum and the mandatory minimum for the offense, they must be found by a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 103 (2013).[1] With respect to drug conspiracies, current circuit law requires that the jury decide two things with respect

---

[1] The defendants in this case were convicted of conspiracy to distribute a controlled substance pursuant to 21 U.S.C. §§ 841 & 846. This Court has recognized that its interpretations of § 841 and § 846 (for drug distribution offenses) apply equally to § 960 and § 963 (for importation offenses) because these statutes "were enacted at the same time as part of the same public law." *United States v. Montgomery*, 150 F.3d 983, 997 (9th Cir. 1998). This brief thus uses the term "drug offense" to capture offenses under both § 841 and § 960, and "drug conspiracy" to capture offenses under both § 846 and § 963.

2

to the drug type and quantity: One, that "the conspiracy [involved] a particular type and quantity of drugs," and two, "that the type and quantity were either within the scope of [the defendant's] agreement with his coconspirators or that the type and quantity were reasonably foreseeable to [the defendant]." *United States v. Banuelos*, 322 F.3d 700, 704 (9th Cir. 2003) (emphasis added).

Everyone agrees that *that* standard should be tossed out. It was created at a time where the Guidelines embraced this disjunctive standard, and it perhaps made sense for the two to track each other. Now, even the Guidelines require more than this disjunctive finding, and neither the government nor the defendants advocate that the Court keep this relic in place.

Writing on a blank slate, the parties have presented the Court with two options. The Appellants advocate that the Court update the jury instruction to match what the guideline currently requires: that a defendant be liable only for the drug type and quantity "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added). That

standard is a significant improvement over the current standard, and there is much to commend it, as set out in the Appellants' Court-Ordered Brief Regarding Initial En Banc Consideration (hereinafter "ASB").

The Government would replace the disjunctive standard with a standard untethered to the Guidelines, and unconnected from the defendant's personal involvement in the conspiracy. *See* Gov't Supp. Br. Regarding En Banc Consideration at 3-4, Dkt. 130 (hereinafter "GSB"). The Government would say that a jury need only decide whether the conspiracy as a whole "involved" a drug type and quantity. *Id.* at 3-4.

Amici write to make three points. First, while consistency with the Guidelines has its virtues, it is most doctrinally consistent to say that the jury must find the type and quantity within the scope of the agreement the defendant specifically intended to enter. This standard properly focuses on punishing the agreement itself, and it also satisfies the Sixth Amendment's requirement for an individualized determination of facts that raise the potential penalty for the offense. Thus, while Amici believe that the Appellants' approach is leagues better than the current approach or the Government's position, Amici believe traditional conspiracy law principles require the potential penalties to be based on a jury's

4

determination as to the scope of the agreement that the defendant specifically intended to enter.

Second, the Court should not adopt the Government's standard. Anchoring heavy mandatory-minimum sentences to conduct that was not foreseeable to a defendant or part of the crime he agreed to commit violates all concepts of proportional justice, goes against centuries of conspiracy law, and treads upon the Sixth Amendment and due process right to have each element of a crime be proved to a jury beyond a reasonable doubt.

And finally, any discussion of the mens rea for a federal drug *conspiracy* offense is incomplete without revisiting the impact of recent Supreme Court decisional law on the mens rea for a *substantive* federal drug offense, which is necessarily incorporated into the conspiracy offense as well. This Court should hold that, under *Rehaif v. United States*, 139 S. Ct. 2191 (2019)—and as properly set out in Judge Fletcher's concurrence in *United States v. Jefferson*, 791 F.3d 1013, 1019-23 (9th Cir. 2015)—a substantive drug offense requires proof of knowledge of the type and quantity of drugs. Thus, this Court should clarify that a defendant cannot be subjected to an enhanced statutory

minimum or maximum, for a conspiracy or substantive drug offense, unless the jury finds beyond a reasonable doubt that he had knowledge that the offense involved that drug type/quantity.

## ARGUMENT

**I.** **Traditional conspiracy law requires that a jury must find that the defendant had the specific intent to commit an offense involving a specified drug type/quantity to trigger the enhanced penalties for a drug conspiracy offense.**

"Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act." *Iannelli v. United States*, 420 U.S. 770, 777 (1975). Indeed, the most "basic fact" about traditional conspiracy law is "that the agreement is the essential evil at which the crime of conspiracy is directed." *Id.* at 777 n.10 (citing Note, *Developments in the Law—Criminal Conspiracy*, 72 Harv. L. Rev. 920, 933—934 (1959) (hereinafter *Developments*)); *see also Developments*, 72 Harv. L. Rev. at 922 ("The gist of the crime is the agreement itself rather than the action pursuant to it."). Because the "agreement remains the essential element of the crime," *Iannelli*, 420 U.S. at 777 n.10, "conspiracy is a distinct offense from the completed object of the conspiracy." *Garrett v. United States*, 471 U.S. 773, 778 (1985).

Despite this fact, both the government's current proposal, and the "reasonably foreseeable" prong of the existing test, focus on the substantive crimes actually committed by the co-conspirators. In Amici's view, this faulty starting premise takes the analysis astray. Because the agreement itself is the target of a conspiracy prosecution, the scope and content of the agreement, rather than the substantive crimes actually committed by the co-conspirators, should be the metric by which criminal liability is measured.[2] That is, criminal liability under the federal drug conspiracy statutes should be determined by what offense the defendant specifically intended and agreed to commit—and that includes the type and quantity of drug that was the object of the parties' agreement.

---

[2] This is separate and apart from *Pinkerton* liability, under which a co-conspirator who did not directly commit the offenses can nevertheless be convicted of these substantive crimes. *See Pinkerton v. United States*, 328 U.S. 640, 648 (1946) (allowing the government to convict individuals substantive offenses committed by coconspirators, as long as those acts were reasonably foreseeable and in furtherance of the conspiracy). Amici address only conspiracy under 21 U.S.C. §§ 846 and 963.

**A.    Traditional conspiracy law requires proof that a defendant specifically intended to accomplish the object of the conspiracy.**

A criminal act "[c]learly . . . cannot be the object [of a conspiracy] unless it is known to both parties; but something more than mere knowledge is necessary." *Developments*, 72 Harv. L. Rev. at 930; *see also United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir. 1987) ("Knowledge of the objective of the conspiracy is an essential element of any conspiracy conviction."). In addition to knowledge, traditional conspiracy law requires proof beyond a reasonable doubt of "two different types of intent." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978). The first type of intent is "the basic intent to agree, which is necessary to establish the existence of the conspiracy." *Id.* . That just means that at least two actors must intend to work together. *Accord United States v. Escobar de Bright*, 742 F.2d 1196, 1198 (9th Cir. 1984) ("[I]t takes two to conspire.").

The second type of intent is "the more traditional intent to effectuate the object of the conspiracy." *U.S. Gypsum Co.*, 438 U.S. at 443 n.20. That is often referred to as "specific intent." *United States v. Jauregui*, 918 F.3d 1050, 1060 (9th Cir. 2019) (Berzon, J., concurring)

8

(citing 2 Wayne R. LaFave, *Substantive Criminal Law* § 12.2(c)(2) (3d ed. 2017)). A defendant must have the specific intent to accomplish the "criminal object" of the conspiracy, which is "the substantive offense which is the immediate aim of the enterprise." *United States v. Callanan*, 364 U.S. 587, 594 (9th Cir. 1961). That specific intent is demonstrated by a "unity of purpose or a common design and understanding" necessary to establish the existence of a conspiracy. *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946); *see also Developments*, 72 Harv. L. Rev. at 932 (what must be proven is "a real desire for the object of a conspiracy, and a fortiori the intent of that object necessary for criminal liability.").

If two individuals have the first type of intent and agree to work together, but do not have the second type of intent, a unity of purpose as to the goal they want to achieve, then there is no conspiracy. *See Krasovich*, 819 F.2d at 255 ("Not only must the government prove knowledge of the illegal objective, it must also prove an agreement with a co-conspirator to pursue that objective as a common one."). Thus, "[i]f two defendants act in concert to achieve a different goal, the government has not shown a meeting of the minds as to a common scheme or plan," which means the government has not proven the existence of a

conspiracy. *United States v. Johnston*, 789 F.3d 934, 940 n.1 (9th Cir. 2015) (quotations and citations omitted). And, in fact, if one co-conspirator misleads the other as to the goal he wants to achieve, that is not a valid conspiracy. *See Krasovich*, 819 F.2d at 255 (approvingly noting a conviction was vacated "where one alleged conspirator, in enlisting another," lied about the objective of the conspiracy because "although both alleged co-conspirators agreed to commit offenses against the United States, they had not agreed on the same offense.") (citation omitted).

This traditional requirement of proof of specific intent is consistent with this Court's statements on the subject. This Court has explained that "[t]he essence of a conspiracy is a 'meeting of the minds.'" *Johnston*, 789 F.3d at 940 n.1. That is why a defendant can only be convicted with proof beyond a reasonable doubt that he "embraced the common purpose of the conspiracy." *United States v. Umagat*, 998 F.2d 770, 772–73 (9th Cir. 1993) (citation omitted). Part of that proof will need to show "the extent to which his own benefits depended on the success of the entire venture." *Id.* . That means a defendant who only suspects that his co-conspirators are likely to commit other crimes cannot be convicted of a

10

conspiracy to commit those crimes. Rather, a defendant is only guilty of a conspiracy to commit crimes that he specifically intends for his co-conspirators to commit in order to ensure that he is also successful in his part of the unlawful agreement.

The question of what offense a defendant agreed to commit, i.e., what is the agreed-upon object of the conspiracy, is therefore the critical factual question that defines the scope of the defendant's criminal liability under traditional principles of conspiracy law.

**B.    The specific intent to commit the offense that is the object of the conspiracy requires proof of knowledge of all elements of the substantive offense, which includes drug type and quantity for federal drug conspiracy offenses.**

Because the specific intent to achieve a particular objective is a predicate to liability for conspiracy, "a conspiracy to commit a particular crime requires intent of the specific elements of that crime." *Developments*, 72 Harv. L. Rev. at 935-36. For federal drug conspiracy offenses, that means a jury must find beyond a reasonable doubt that a defendant agreed and intended to commit an offense involving drugs. And if the conspiracy offense that a defendant is charged with specifies the drug type and quantity involved, then the jury should be required to

11

find beyond a reasonable doubt that the defendant specifically agreed and intended to commit an offense involving that drug type and quantity. That is because drug type and quantity are elements of a drug conspiracy offense. *See Jefferson*, 791 F.3d at 1016 ("*Alleyne*[, 570 U.S. at 103] renders the type and quantity of a controlled substance 'elements' of a [federal drug] offense.").

The proposition that drug type and quantity are elements of a drug conspiracy offense is uncontroversial after the Supreme Court's decision in *Alleyne*, 570 U.S. at 103. The federal drug crime statutes specify offenses covering all "controlled substances," but the permissible sentencing ranges vary based on the specific drug type and quantity involved. *See*, *e.g.*, 21 U.S.C. §§ 841(b) (listing penalties based on drug type and quantity for manufacturing, distributing, or dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance), 960(b) (listing penalties based on drug type and quantity for importing or exporting a controlled substance). Because drug type and quantity increase the potential sentencing range for these drug offenses, those facts must be proven beyond a reasonable doubt. *See United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (en banc)

(citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). The same is true when drug type and quantity trigger a mandatory minimum sentence. *See Alleyne*, 570 U.S. at 103 ("[A]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."). That means, as this Court has already acknowledged, that drug type and quantity are elements of federal drug offenses. *See Jefferson*, 791 F.3d at 1016.

Put differently, the federal drug statutes do not create a single crime with increasing sentences based on the drug type and quantity involved. Rather, these drug statutes create a "core crime," as well as many more "aggravated" crimes that have additional elements of drug type and/or quantity. *See Alleyne*, 570 U.S. at 113 ("[T]he core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury.").

The "core crime" created by the federal drug statutes does not require proof a specific drug type or quantity, and it is punishable by a maximum of one year in custody. *See* 21 U.S.C. § 841(b)(3); 21 U.S.C. § 960(b)(7); *see also United States v. Hunt*, 656 F.3d 906, 916

13

(9th Cir. 2011) (one-year maximum sentence applies when there is no proof beyond a reasonable doubt of drug type and quantity). Each of the "aggravated crimes" in the federal drug statutes has an increased potential penalty based on additional elements of drug type and/or quantity. And some of these "aggravated crimes"—like the one Appellants were convicted of in this case—have mandatory minimum penalties based on additional elements of drug type and quantity.

Just as the substantive federal drug offenses have a core crime and a variety of aggravated crimes based on additional elements of drug type and quantity, the federal drug conspiracy statutes criminalize the core crime of conspiring to commit a drug offense and more aggravated crimes of conspiring to commit drug offenses involving specific drug types and quantities.

Understanding the structure of the drug conspiracy statutes, this Court must turn back to the rule that "a conspiracy to commit a particular crime requires intent of the specific elements of that crime." *Developments*, 72 Harv. L. Rev. at 935-36. For federal drug conspiracies, that means the defendant must have specifically intended to commit an offense that involved the drug type and quantity that are elements of the

14

aggravated crime before he can be convicted of that aggravated conspiracy offense with elevated penalties. And that, in turn, means that he had to specifically intend—and therefore know—that the drug type and quantity fell within the scope of his agreement. One cannot specifically intend to accomplish an objective that he does not know.

That is why in *Krasovich*, this Court held that the defendant could not be convicted of a conspiracy to defraud the Internal Revenue Service when he had only agreed to fraudulently register a vehicle and "[n]othing in the circumstances of the transaction suggest[ed] that [the defendant] knew that the purpose of the concealment was to evade taxes." 819 F.2d at 6. Similarly, a defendant cannot be convicted of a conspiracy to distribute an unspecified amount of methamphetamine (which carries a 20-year maximum sentence), if he only agreed to distribute an unspecified amount of marijuana (which carries a 5-year maximum sentence). If a defendant did not know the drug type/quantity involved, then that drug type/quantity was not part of his agreement and should not trigger the enhanced penalties.

That rule is consistent with this Court's opinion in *Umagat*, 998 F.2d at 772-73. In that case, three defendants—Umagat, Roberto, and

15

Belanger—were charged with conspiracy to smuggle marijuana. *Id.* at 771. The other individual who hatched the plan to import marijuana "had previously smuggled marijuana from the Philippines into Guam on at least three occasions," all three of which occurred before Umagat, Roberto, or Belanger got involved. *Id.* . Umagat was a narcotics dog handler, and he agreed to "let the marijuana pass through Customs undetected" in exchange for "a quarter share of the proceeds." *Id.* at 772-73. Roberto was an employee of Dollar Rent-a-Car, and Belanger was her supervisor. *Id.* at 772. They were recruited when a plan was needed to recover the marijuana, and they agreed to provide a car from Dollar "in exchange for a small share of the marijuana or other compensation." *Id.* All three were later convicted of a conspiracy to distribute marijuana that "encompassed all four shipments of the marijuana," including the three shipments that occurred before they agreed to participate in smuggling. *Id.*

On appeal, all three did not dispute the existence of an "overall" conspiracy to distribute marijuana that encompassed all four shipments. *Id.* at 722. But they argued that there was insufficient evidence to hold them liable for this conspiracy. *Id.* As to Robert and Belanger, this Court

16

agreed. *Id.* at 773. This Court reasoned that the government had not proven "that they possessed actual knowledge of the breadth of the overall conspiracy, or that we may attribute such knowledge to them." *Id.* ("Belanger and Roberto cannot be held criminally responsible for an overall conspiracy to distribute marijuana of which they were ignorant and upon which their own benefits did not depend.").

This Court reached a different result for Umagat. First, this Court acknowledged that "Umagat's awareness of and participation in one transaction does not in itself connect him to the entire, months-long conspiracy, which encompassed four such transactions." *Id.* But this Court determined that the facts showed Umagat had "obtained some knowledge regarding [the other co-conspirators'] past success at smuggling marijuana into Guam" and agreed to get involved "only after becoming aware of the entire scope of their smuggling activities." *Id.* at 775. In other words, because Umagat agreed and specifically intended to join a conspiracy knowing that it involved multiple large shipments of marijuana, he could be held liable for all of the loads.

*Umagat* and *Krasovich* both support the conclusion that this Court should hold that enhanced drug penalties apply to drug conspiracy

17

offenses only if the jury finds beyond a reasonable doubt that the defendant entered the agreement intending and knowing that it involved the drug type and/or quantity that triggers the enhanced penalty. In other words, whether the enhanced drug penalties apply should be based on whether a jury finds that the specific drug type/quantity was the specifically-intended and known object of the defendant's particular agreement.

**III.** **The Government's suggested standard is inconsistent with traditional conspiracy law and the Sixth Amendment because it would punish a defendant for all drug types and quantities that were "involved" in a broad conspiracy even if those drug types and quantities were not intended, known, or even reasonably foreseen by a particular defendant.**

The government argues that a defendant is not required to specifically intend, know, or even reasonably foresee the drug type and quantity involved in a broad conspiracy to be subjected to the enhanced penalties for drug offenses. *See* GSB at 14. The government points out that the drug statutes only state that a conspiracy must "involve" a drug type/quantity to trigger these enhanced penalties. *See* GSB at 13. That, according to the government, means that a defendant can be punished for drug types and quantities that he did not specifically intend to get

18

involved with or know about—or even reasonably foresee. *See* GSB at 14. That cannot be right as such a rule would be inconsistent with principles of traditional conspiracy law, would lead to absurd results, and would create Sixth Amendment problems.

As explained above, traditional conspiracy law requires proof that the defendant entered the conspiracy with the specific intent to accomplish its object. *See U.S. Gypsum Co.*, 438 U.S. at 443 n.20. That means there needs to be proof that the co-conspirators "had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement," in order to convict. *American Tobacco Co.*, 328 U.S. at 810. But two (or more) individuals cannot have a "unity of purpose" as to acts that they do not know about or that are only reasonably foreseeable. Such acts are not part of the "common purpose" at all, given that they are not actually intended and are not necessary to ensure "the success of the entire venture." *Umagat*, 998 F.2d at 773 (quotations and citation omitted); *see also id.* at 772-73 ("[A] defendant cannot be legally bound to a conspiracy unless his understanding with co-conspirators was of sufficient scope to warrant the conclusion that he embraced the common purpose of the conspiracy.") (quotations and

19

citation omitted). Without proof of the defendant's specific intent to unknown or merely reasonably foreseeable offenses, they are not part of the agreement—and therefore not part of the traditional definition of the crime of conspiracy.

There is no need to expand these principles in order to punish these acts. Indeed, the government even acknowledges that there is no need to "conflat[e] liability for the crime of conspiracy and for substantive crimes committed by the conspiracy." GSB at 3 (quoting *Jauregui*, 918 F.3d at 1062 (Berzon, J., concurring)).[3] That is because those substantive crimes could be separately charged, and the jury could be instructed on a *Pinkerton* theory of liability to convict co-conspirators who did not personally commit those particular crimes. That means restricting conspiracy liability to only the penalties for the crime that a defendant

---

[3] To clarify, "crimes committed by the conspiracy," really means "crimes committed by *members of* the conspiracy." *Accord Developments*, 72 Harv. L. Rev. at 928 (noting "the courts seem to be using the word conspiracy to refer not to a crime…but rather to a group–the body of men who are guilty of the crime of conspiring with one another" and suggesting "that the courts should be careful to use the word to refer to the crime of conspiracy rather than the group," especially when "additional criminal liability will be imposed by holding a defendant to be a member of the 'same' conspiracy").

specifically intended to agree to commit in no way prevents the government from holding a defendant liable for the unlawful acts of his co-conspirators, as long as those crimes were in furtherance of the conspiracy and reasonably foreseeable. The government is merely required to prove those substantive offenses, rather than relying only on the drug conspiracy statute to punish a defendant who only specifically intended to commit a different offense.

But if this Court strays from these traditional principles and adopts the Government's standard, that would allow for unfair and absurd results. For example, a defendant who agreed to distribute an unspecified amount of marijuana in prison on a single occasion for the Mexican Mafia (which carries a 5-year maximum sentence) could be punished for a kilogram of methamphetamine that had been distributed by others in prison on behalf of the Mexican Mafia and subject to a 10-year mandatory minimum sentence. These enhanced penalties are supposed to "reflect the basic insight" that someone who is involved in an offense involving methamphetamine "is more culpable than" someone who is involved in an offense involving marijuana. *Jefferson*, 791 F.3d at 1021 (Fletcher, J., concurring). But the Government's standard would permit—and, in the

21

case of mandatory minimums, require—sentences that do not reflect that distinction in culpability.

Requiring the government to prove either that a defendant is liable for the substantive acts of his co-conspirators under a *Pinkerton* theory of liability or that he specifically intended to agree to commit an offense involving a specific drug type/quantity also ensures that his Sixth Amendment rights are not being violated. The government appears to understand the Sixth Amendment concerns that arise if there is no individualization as to drug type/quantity, as reflected by its decision to follow a policy of individualized charges after the Supreme Court's decision in *Alleyne*. *See* GSB 16-17. A majority of Circuits also understand these concerns. *See United States v. Stoddard*, 892 F.3d 1203, 1219 (D.C. Cir. 2018) (collecting cases). This Court should similarly avoid adopting an expansive standard like the one the government advocates for and require an individualized determination of drug type and quantity for each defendant convicted of a drug conspiracy offense.

So for the case at bar, the jury should have only been asked to determine whether each defendant specifically intended to agree to

commit an aggravated drug conspiracy offense.[4] Thus, the jury should have decided whether each defendant specifically intended and agreed to distribute methamphetamine. If the answer was yes, that defendant would be subjected to a statutory maximum sentence of 20 years. *See* 21 U.S.C. § 841(b)(1)(C). Then, the jury should have decided whether each defendant specifically intended and agreed to distribute 50 grams or more of methamphetamine. If the answer was yes, that defendant would be subjected to a ten-year mandatory minimum sentence and a statutory maximum sentence of life. *See* 21 U.S.C. § 841(b)(1)(A)(viii).

The jury should have also decided whether each defendant specifically intended to distribute heroin. If the answer was yes, that defendant would be subjected to a statutory maximum sentence of 20 years. *See* 21 U.S.C. § 841(b)(1)(C). Finally, the jury should have decided whether each defendant specifically intended to distribute 100 grams or more of heroin. If the answer was yes, then that defendant would be subjected to a five-year mandatory minimum sentence and a statutory

---

[4] Using these traditional conspiracy law principles, there would be no reasonable foreseeability prong. There would also be no question as to the drug type/quantity involved that the defendant did not specifically intend and agree to.

23

maximum sentence of 40 years. *See* 21 U.S.C. § 841(b)(1)(B)(i). Absent these specific findings, the defendants should not have been convicted of conspiracy to commit an aggravated drug offense.[5]

## IV. Following the Supreme Court's decision in *Rehaif*, this Court must reexamine prior precedent and hold knowledge of drug type and quantity are elements of substantive federal drug offenses, which means knowledge of drug type/quantity must also be proven for drug conspiracy offenses.

Regardless of how the Court determines the scope of drug offense conspiracy liability, it must also answer the threshold question of what mens rea the government must prove to obtain a conviction for a substantive federal drug offense. This initial step is required because it is "well-established" that "'the requisite intent necessary to commit [the] underlying, substantive offense,' is an essential element of any conspiracy." *United States v. Kim*, 65 F.3d 123, 126 (9th Cir. 1995) (quoting *United States v. Schmidt*, 947 F.2d 362, 367 (9th Cir. 1991), and

---

[5] If the government was concerned about its ability to prove the defendants' specific intent to commit an offense involving these drug types/quantities, it could have requested an instruction for the lesser offense of conspiracy to distribute an unspecified controlled substance. That finding would expose the defendant to the basic one-year statutory maximum sentence for the core drug conspiracy offense. *See* 21 U.S.C. § 841(b)(3).

*United States v. Melchor-Lopez*, 627 F.2d 886, 890 (9th Cir. 1980)); *see also Ingram v. United States,* 360 U.S. 672, 678 (1959) ("'(C)onspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself.'") (quoting *Developments*, 72 Harv. L. Rev. at 939). In other words, "if a jury is asked to determine whether a defendant conspired to commit an offense, the jury needs to know the elements of that offense." *United States v. Alghazouli*, 517 F.3d 1179, 1189 (9th Cir. 2008). And the Supreme Court's recent decision in *Rehaif* supports adopting Judge Fletcher's concurrence in *Jefferson* to hold that a substantive federal drug offense requires proof that the defendant knew the drug type and quantity to impose the escalating statutory maximums and mandatory minimums contained in the drug statutes.

**A.  When disagreeing with prior precedent in his concurrence in *Jefferson*, Judge Fletcher correctly applied a presumption of a mens rea requirement to conclude that the draconian penalties for drug offenses cannot be imposed without knowledge of specified drug types and quantities.**

This Court most recently addressed the requisite mens rea for federal drug offenses in *Jefferson*. The majority held that drug "type and

25

quantity" are material "elements" of a federal drug offense.[6] *Jefferson*, 791 F.3d at 1016. Even so, the majority adhered to prior precedent and held that a defendant does not have to know the type or quantity of controlled substance involved in the offense in order to be sentenced under the various provisions in 21 U.S.C. § 960(b). The majority observed that the "mens rea standard in § 960(a) is separate and distinct from the penalty ranges set forth in § 960(b)." *Id.* at 1018. The majority gave only passing reference to "the presumption that scienter is generally implied in a criminal statute," and declared "there is no potential for the penalization of innocent conduct nor do we face constitutional avoidance concerns." *Id.*

Judge Fletcher concurred, explaining that he believed he was bound by this Court's precedent on the issue, but that this precedent had been incorrectly decided. *Id.* at 1019-23 (Fletcher, J., concurring). Unlike the majority, Judge Fletcher relied on "a cardinal rule of the interpretation

---

[6] *Jefferson* involved an importation offense under § 960, but as stated, interpretations § 960 and § 963 (for importation offenses) apply equally to § 841 and § 846 (for drug distribution offenses) because these statutes "were enacted at the same time as part of the same public law." *Montgomery*, 150 F.3d at 997.

of criminal statutes that 'the existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence.'" *Id*. at 1020 (quoting *U.S. Gypsum Co.*, 438 U.S. at 436). He also found "nothing in the Anti-Drug Abuse Act that overcomes the presumption of a mens rea" as to the elements of drug type and quantity. *Id*. Instead, the "Anti-Drug Abuse Act sets up a sentencing scheme" that is "considerably more punitive" than the "'harsh penalties'" that the Supreme Court has deemed "'sufficiently stringent to support a requirement of mens rea.'" *Id*. at 1021 (quoting *United States v. Burwell*, 690 F.3d 500, 548 (D.C. Cir. 2012) (en banc) (Kavanaugh, J., dissenting)). In sum, the "longstanding presumption of a mens rea requirement, the history and purpose of the Anti–Drug Abuse Act, and the lessons of *Alleyne* and *Apprendi*" require knowledge of the particular type and quantity of drugs. On the other hand, "[s]ubjecting a defendant to a decade in prison based on a fact that he did not know . . . is inconsistent with 'fundamental and far-reaching' principles of criminal liability." *Id*.

27

**B.    This Court must now overrule *Jefferson* for the reasons expressed in Judge Fletcher's concurrence and recently embraced by the Supreme Court in *Rehaif*.**

The Supreme Court's recent opinion in *Rehaif* confirms Judge Fletcher's concurrence and undermines the lead opinion in *Jefferson*.

      1.    Following *Rehaif*, the mens rea for an offense must apply to <u>all</u> material elements.

In *Rehaif*, the Supreme Court analyzed 18 U.S.C. § 922(g), which is the statute that criminalizes the possession of firearms by specified individuals. 139 S. Ct. at 2191. The punishment section for this statute is found in a "separate provision," 18 U.S.C. § 924(a)(2), which states that anyone who "knowingly violates" § 922(g) shall be fined for imprisoned for up to ten years. The question presented to the Supreme Court was whether the word "knowingly" in § 922(g) meant that the government was required to prove beyond a reasonable doubt "that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)?" *Id.* at 2194.

The Supreme Court held that the government had to prove knowledge of both of these elements. *Id.* Specifically, the Supreme Court held that the "knowingly" mens rea from § 924(a)(2) applied to both

elements of the offense: the defendant's conduct and the defendant's status as one of the specified individuals who are prohibited from possessing firearms. *Id.*

To reach this conclusion, the Supreme Court began by explaining that "[w]hether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent." *Id.* at 2195. And the Supreme Court explained that courts must "start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Id.* (quotations and citations omitted). The Supreme Court further explained that it "normally characterize[s] this interpretive maxim as a presumption in favor of 'scienter,' by which we mean a presumption that criminal statutes require the degree of knowledge sufficient to 'mak[e] a person legally responsible for the consequences of his or her act or omission.'" *Id.* (quoting Black's Law Dictionary 1547 (10th ed. 2014)).

The Supreme Court clarified that "the presumption in favor of scienter" is applied "even when Congress does not specify any scienter in

29

the statutory text," but that it "applies with equal or greater force when Congress includes a general scienter provision in the statute itself." *Id*. The Supreme Court then relied on the Model Penal Code's explanation that, "when a statute 'prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to <u>all the material elements of the offense</u>, unless a contrary purpose plainly appears.'" *Id*. (quoting ALI, Model Penal Code § 2.02(4), p. 22 (1985)) (emphasis added).

Turning to the defendant's specific conviction, the Supreme Court determined that it could "find no convincing reason to depart from the ordinary presumption in favor of scienter." *Id*. Importantly, the Supreme Court even stated that "[t]he statutory text supports the presumption." *Id*. That was so even though the "knowingly" mens rea was found in § 924(a)(2), whereas the prohibited conduct was described in § 922(g)— an entirely different provision.

The Supreme Court reasoned that "the text of § 922(g) simply lists the elements that make a defendant's behavior criminal," and, "'[a]s a matter of ordinary English grammar,' we normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of

30

the crime.'" *Id*. at 2196 (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009)). The Supreme Court found "no basis to interpret 'knowingly' as applying to the second § 922(g) element but not the first." *Id*. It thus concluded that "Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." *Id*.

To further justify its decision, the Supreme Court referenced its earlier decisions that emphasized "scienter's importance in separating wrongful from innocent acts." *Id*. It noted that it had historically "typically declined to apply the presumption in favor of scienter" only when analyzing public welfare statutes that "carry only minor penalties." *Id*. at 2197. For offenses that are punished more severely, "[s]cienter requirements advance this basic principle of criminal law by helping to separate those who understand the wrongful nature of their act from those who do not." *Id*. (quotations and citation omitted).

The Supreme Court noted that "possession of a gun can be entirely innocent," so it was "the defendant's *status*, and not his conduct alone, that makes a difference." *Id*. at 2197. For that reason, the defendant would not understand the wrongful nature of his act unless he knew his

status. In other words, "the defendant's status is the crucial element separating innocent from wrongful conduct." *Id.* (quotations and citation omitted). And "criminal sanctions normally do not attach" when unlawful behavior is the result of an "innocent mistake." *Id.* at 2197 (citing O. Holmes, The Common Law 3 (1881) ("even a dog distinguishes between being stumbled over and being kicked")).

> 2. *Jefferson* is clearly irreconcilable with *Rehaif*'s requirement that the mens rea for an offense applies to all material elements.

This Court's precedent that the federal drug statutes do not require knowledge of drug type and quantity is irreconcilable with *Rehaif*. The lead opinion in *Jefferson* recognized that drug type and quantity are material elements of the offense but reasoned that the presumption in favor of mens rea only applies to elements that make the conduct criminal. *See Jefferson*, 791 F.3d at 1018. *Rehaif* demonstrates that this reasoning is incorrect; the presumption is that an offense's stated mens rea applies to "all material elements of the offense," 139 S. Ct. at 2195 (quotations omitted), in order to ensure that a defendant understands the wrongful nature of his actions and is not punished for facts of which he is mistaken or ignorant.

For drug offenses, drug type and quantity are the "crucial" elements that drive the wrongfulness of a defendant's conduct, as reflected by Congress's decision to allow for increasingly draconian penalties based on these facts. It would be inconsistent with *Rehaif* to allow a defendant to be punished based on these "crucial" elements if he did not even know about them.

Thus, *Rehaif* confirms that the presumption applies to <u>all</u> material elements, even those like drug type and quantity that aggravate an offense, because a defendant would otherwise be subjected to punishments that exceed his understanding of the wrongful nature of his actions. That is as it should be given the draconian penalties that are triggered by these elements. *See also Burwell*, 690 F.3d at 543 (Kavanaugh, J., dissenting) ("[T]he presumption applies *both* when necessary to avoid criminalizing apparently innocent conduct *and* when necessary to avoid convicting of a more serious offense for apparently less serious criminal conduct.").

> 3. Nothing in the drug statutes contradict the requirement that the mens rea must apply to the material elements of drug type and quantity.

Neither the majority in *Jefferson* nor any other opinion from this Court has stated that the statutory scheme plainly demonstrates a contrary purpose to rebut the presumption. The majority in *Jefferson* relied on the Sixth Circuit's opinion in *United States v. Dado*, 759 F.3d 550, 570 (6th Cir. 2014). But that opinion also did not find such a plainly contrary purpose, and *Dado* was a divided opinion with a dissent advocating Judge Fletcher's position. *Id.* at 571-73 (Merritt, J., dissenting). These opinions have been unable to find a plainly indicated contrary purpose because the statutory scheme does not in fact plainly indicate a contrary rule sufficient to rebut the presumption.

The majority in *Jefferson* did observe that the mens rea for § 960 is set forth in subsection (a) while drug type and quantity are set forth in subsection (b). *See Jefferson*, 791 F.3d at 1018. But this is not a plain indication that would rebut the presumption, as demonstrated by *Rehaif*, where the mens rea was actually contained in an entirely separate statute, 18 U.S.C. § 924(a)(2), from the prohibited status element in the

34

§ 922(g) offense.[7] Under *Rehaif*, the presumption in favor of mens rea governs, so the "knowingly or intentionally" mens rea specifically set forth in the drug statutes applies to the material elements of drug type and quantity. This mens rea applies equally to drug conspiracies, because "the requisite intent necessary to commit the underlying, substantive offense, is an essential element of any conspiracy." *Kim*, 65 F.3d at 126 (quotation and brackets omitted).

## CONCLUSION

This Court should hold that a jury must find the defendant had the specific intent to commit an offense involving a specified drug type/quantity to trigger the enhanced penalties for drug conspiracies.

Respectfully submitted,

Dated:   October 10, 2019   */s/ Kimberly S. Trimble*
**KIMBERLY S. TRIMBLE**
**VINCENT J. BRUNKLOW**
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5097
Telephone:   (619) 234-8467

Attorneys for Amicus Curiae

---

[7] But the labels in this statute are "not a reliable guide to congressional intentions." *Buckland*, 289 F.3d at 565.

35

Additional counsel:

Rich Curtner
Federal Public Defender, District of Alaska
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501

Michael Filipovic
Federal Public Defender, Western District of Washington
Westlake Center Office Tower
1601 Fifth Avenue, Room 700
Seattle, WA 98101

Anthony Gallagher
Federal Defenders of Montana
104 Second Street South, Suite 301
Great Falls, MT 59401-3645

Andrea George
Federal Defenders of Eastern Washington and Idaho
10 North Post Street, Suite 700
Spokane, WA 99201-0705

John T. Gorman
Office of the Federal Public Defender for the District of Guam
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910

Lisa Hay
Federal Public Defender, District of Oregon
101 SW Main Street, Suite 1700
Portland, OR 97204

Steven Kalar
Office of the Federal Public Defender for the Northern District of California
Phillip Burton U.S. Courthouse
450 Golden Gate Avenue
Suite 19-6884
San Francisco, CA 94102-3434

Amy Karlin
Office of the Federal Public Defender for the Central District of California
321 East 2nd Street
Los Angeles, CA 90012

Dick Rubin
Federal Defender Services of Idaho
702 West Idaho Street, Room 1000
Boise, ID 83702

Jon Sands
Federal Public Defender, District of Arizona
850 West Adams Street, Room 201
Phoenix, AZ 85007-2730

Heather Williams
Office of the Federal Defender for the Eastern District of California
801 I Street, 3rd Floor
Sacramento, CA 95814-2510

Peter Wolff
Federal Public Defender, District of Hawaii
Prince Kuhio Federal Building
300 Ala Moana Boulevard
Suite 7-104
Honolulu, HI 96850-0001

**C**ERTIFICATE OF **C**OMPLIANCE

9th Cir. Case No.(s) 15-50509, 16-50048, 16-50117, 16-50195, 16-50345

I am the attorney or self-represented party.

**This brief contains <u>6,999</u> words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

**[x] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).**

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s Kimberly S. Trimble*       **Date** October 10, 2019

39
